RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TIMOTHY J. PAGLIARA,

        *Plaintiff-Appellant,*

    *v.*

        No. 12-5298

JOHNSTON BARTON PROCTOR AND ROSE,
LLP,

        *Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cv-679—Kevin H. Sharp, District Judge.

Argued: January 15, 2013

Decided and Filed: February 27, 2013

Before: COLE and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eugene N. Bulso, Jr., LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, for Appellant. John C. Hayworth, WALKER, TIPPS & MALONE, PLC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Eugene N. Bulso, Jr., LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, for Appellant. John C. Hayworth, Joseph F. Welborn III, Emily B. Warth, WALKER, TIPPS & MALONE, PLC, Nashville, Tennessee, for Appellee.

_____

## OPINION
_____

COLE, Circuit Judge. Timothy Pagliara sued Johnston Barton Proctor & Rose, LLP (JBPR) after it settled a customer complaint against Pagliara for allegedly negligent

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

investment advice notwithstanding Pagliara's objections. The district court rejected all of his claims. We affirm.

I.

Pagliara has been a licensed securities broker for more than twenty-five years. In that time, he has received numerous accolades and maintained a spotless record with the Financial Industry Regulatory Authority (FINRA)—save for one blemish. That blemish inspired this case.

We begin by way of background. Pagliara was once a partner with PMW partners (PMW), which did business in Tennessee under the name Capital Trust Wealth Management Group (Capital Trust). In 2002, Capital Trust signed a Branch Office License Agreement (License Agreement) to operate as the Tennessee arm of NBC Securities, Inc. (NBC), an Alabama-based securities firm, under which Pagliara served as an employee and registered representative of both Capital Trust and NBC. This arrangement lasted until early 2008, when Capital Trust and NBC experienced a falling out that led to protracted litigation between the two.

Around this same time, a meeting between Pagliara and a long-time client set in motion a chain of events culminating in the instant case. Philip Butler had approached Pagliara in search of advice on how to invest $100,000. After a comprehensive discussion, Butler decided to follow Pagliara's recommendation to invest the full amount in three bank stocks. Things went downhill from there. The financial crisis caught America by surprise a few months later, and the value of Butler's investments tumbled. Butler managed to recoup some of his losses thanks to Pagliara's short-term strategy of doubling down on the investments in then-devalued bank stocks. The damage, however, had been done (just how much damage is disputed).

About a year later, Butler's attorney sent a letter addressed to NBC, on which Pagliara was copied, complaining of allegedly negligent investment advice and threatening legal action unless Butler received $64,000 in compensation. NBC soon after retained JBPR to handle the defense of Butler's claim. JBPR represented NBC in

a number of other legal matters, including the ongoing litigation between NBC and Capital Trust. JBPR immediately notified Butler's attorney of its engagement.

Unbeknownst to NBC and JBPR, Pagliara also contacted Butler upon receiving the demand letter and offered to settle the claim for $14,900—or $100 below FINRA's mandatory reporting threshold for customer disputes. But Butler refused to go along with it. Pagliara then informed NBC of his intent to defend the claim himself in FINRA arbitration—without making mention of the failed settlement attempt—and noted that he "object[ed] to any payment by NBC . . . to settle [Butler's] frivolous claim." In response, NBC insisted that Pagliara not have any contact with Butler regarding the claim, a request NBC reiterated when it learned of Pagliara's offer to Butler nearly a month after the fact.

The dispute over who would defend the claim stems from the License Agreement signed by the parties, which provides in relevant part:

> [Capital Trust] shall indemnify, defend and hold harmless NBCS from and against any and all claims or actions and all costs, expenses, losses, damages and liabilities . . . arising out of the affiliation of [Capital Trust] . . . . NBCS, at its sole option and without the prior approval of either [Capital Trust] or the applicable Representative, may settle or compromise any claim at any time.

Pursuant to this provision, NBC sought to proceed without Pagliara's input. At the request of NBC and JBPR, Pagliara eventually produced his client file on Butler and a written response to the complaint, which told his side of the story. NBC and JBPR weighed the contents of both against Butler's demand and the potential drawbacks of going to arbitration. Not wanting to risk it, NBC instructed JBPR to seek a reasonable settlement of Butler's claim. The first offer it made to Butler was in the amount of $15,000—virtually identical to Pagliara's earlier attempt to settle—which Butler once again rejected. NBC decided it was willing to go higher. The subsequent offer in the amount of $30,000 proved acceptable to Butler, and JBPR finalized the settlement on May 10, 2010. By its terms, the settlement released all of Butler's remaining claims

against NBC; it did not, however, provide for a similar release of claims against Pagliara, which is now a point of contention.

NBC and JBPR notified Pagliara of the settlement shortly thereafter. He did not welcome the news. Instead, Pagliara threatened legal action and made it known that he would "not be a party to any settlement in excess of $14,900," fearing his business would suffer from a blemished regulatory record. Nonetheless, the settlement amount imposed an automatic duty on Pagliara to report the claim to FINRA because it exceeded $15,000. Pagliara did, however, catch one break. Because NBC declined to exercise its contractual right to seek indemnification of the $30,000 it paid Butler, Pagliara avoided any monetary loss as a result of the claim.

Still, a month later, Pagliara made good on his threat and filed suit against JBPR in state court, which JBPR removed to the United States District Court for the Middle District of Tennessee on the basis of diversity jurisdiction. Pagliara is seeking redress for alleged injuries to his psyche and business reputation flowing from the settlement, which is now a black mark on his otherwise-pristine regulatory record. He asserted three causes of action in his complaint: (1) a breach of fiduciary duty, (2) a violation of the Tennessee Consumer Protection Act (TCPA), and (3) intentional infliction of harm. JBPR moved to dismiss all three pursuant to Rule 12(b)(6). The district court granted the motion as to the latter two claims, concluding in part that intentional infliction of harm is not recognized as a tort under Tennessee law, but denied the motion as to the breach of fiduciary duty claim. A year of discovery ensued. JBPR then moved for summary judgment on Pagliara's remaining claim. The district court this time granted the motion and entered summary judgment in favor of JBPR, holding that JBPR had discharged any duty owed to Pagliara and that Pagliara produced insufficient evidence of damages. Pagliara timely appealed.

## II.

There are two questions in this case—both straightforward. First, did the district court properly grant JBPR's motion for summary judgment on the breach of fiduciary

duty claim? Second, did the district court properly grant JBPR's motion to dismiss the TCPA claim? We address each in turn.

A.

Pagliara argues that the district court erred in granting summary judgment in favor of JBPR on his state law claim for breach of fiduciary duty. We review the district court's decision to grant summary judgment de novo. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). In conducting our review, we construe the evidence in the light most favorable to Pagliara and draw all reasonable inferences against JBPR as the moving party. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). Because neither the evidence presented nor inferences drawn therefrom support Pagliara's claim, we affirm.

Under Tennessee law, a fiduciary relationship may arise between two parties in any number of circumstances, both formal and informal, including "whenever confidence is reposed by one party in another who exercises dominion and influence." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005) (citing *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). In the most general sense, a fiduciary duty is the duty to act with due regard for the interests of another. This means a fiduciary "is bound to exercise good faith and due diligence" in its dealings. *McRedmond v. Estate of Marianelli*, 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000). The precise contours of a duty are necessarily a matter of context. *Cf. Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 642-43 (Tenn. 2008) (describing the fiduciary duty owed in the physician-patient context); *McRedmond*, 46 S.W.3d at 738 (describing the fiduciary duty owed in the corporate context). It is axiomatic that a plaintiff alleging a breach must prove (1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages. 23 Tennessee Practice Series: Elements of an Action § 8.1 (2009-2010); *see also Morrison v. Allen*, 338 S.W.3d 417, 438 (Tenn. 2011).

Pagliara says his complaint addressed each element. He identifies a fiduciary relationship that allegedly arose at the time JBPR took sole control—and Pagliara

simultaneously relinquished control—of the defense of Butler's claim.  He asserts that JBPR subsequently breached the duty it owed to him in a number of ways that boil down to failing to negotiate in good faith, accepting a settlement that was not a reasonable compromise of Butler's claim, and intending to harm Pagliara in so doing.  Finally, Pagliara describes the mental and emotional anguish, not to mention reputational harm, he suffered as a direct result of the settlement.  On appeal, he contends that the weight of the supporting evidence and all attendant inferences raise a question of fact sufficient to survive summary judgment.  But the fundamental problem with Pagliara's case is that the factual allegations in his complaint do not prove what he needs to prove.  More specifically, the evidence he presents of JBPR's alleged bad faith and intent to harm is no evidence at all.  Because he cannot make it beyond the second element of a viable claim for breach of fiduciary duty, neither do we.

To see why, consider the principal evidence set forth in Pagliara's complaint. First, Pagliara notes that JBPR took full control of the defense, from which he concludes that JBPR "deliberately barred [him] from exercising his contractual rights to defend the Butler claim."  But Pagliara did not have any such rights.  The License Agreement expressly allowed NBC, "at its sole option and without the prior approval of" Pagliara, to settle "any claim at any time."  That NBC chose to do so proves little more.  Second, Pagliara makes much of the fact that JBPR "expressly carved [him] out of the release provision of the Settlement Agreement."  But Pagliara admits that he told NBC and JBPR that he wanted no part in the settlement.  As such, it is neither surprising nor suspicious that JBPR did not negotiate his release when he continued to object to the settlement to which it was attached.  Third, Pagliara says the amount of the settlement (or any settlement at all) under these circumstances was so unreasonable that the only plausible explanation is an intent to harm him and his business.  But even Butler's attorney testified that $30,000 represented a "very good settlement from NBC's perspective."  Moreover, Pagliara's own clandestine attempt to settle a claim that his complaint repeatedly characterizes as frivolous undermines his point.  The remainder of his factual allegations are similarly miscast.  Even considered as a whole, they do not so

much as hint at a lack of good faith or ill intent on the part of JBPR that might constitute a breach of whatever duty (if any) it owed to Pagliara.

All of which is to say that the only evidence supporting Pagliara's claim is a number of bald assertions of bad faith and intent to harm set forth in the complaint. While it is true that we must draw all reasonable inferences in Pagliara's favor, *see Int'l Union*, 434 F.3d at 483, inference alone is not enough to rescue his claim. Pagliara does not offer a remotely plausible narrative from which we could reasonably deduce that JBPR intended to (or did) do him wrong. Without it, Pagliara fails to raise a "genuine" factual question as to whether JBPR breached a duty it may have owed him. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) ("An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." (citation omitted)). Because we conclude that Pagliara cannot make this essential showing, we need not consider whether a fiduciary relationship actually existed between the parties or whether Pagliara suffered compensable damages directly attributable to the breach. The district court did not err in granting summary judgment in favor of JBPR.

B.

Pagliara also argues that the district court erred in granting JBPR's motion to dismiss his TCPA claim. We review the district court's dismissal de novo. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). Again, we construe the complaint in the light most favorable to Pagliara as the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). We must allow the litigation to proceed if his factual allegations state a plausible claim for relief under the TCPA. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, because the TCPA does not reach JBPR's conduct in these circumstances, we affirm.

The TCPA is a statute designed to protect Tennessee consumers from unfair and deceptive practices in the course of trade and commerce. Tenn. Code Ann. §§ 47-18-101 to -130 (2012). A plaintiff stating a claim under the TCPA must show two things: "(1) that the defendant engaged in an unfair or deceptive act or practice" and (2) that the

plaintiff suffered "an ascertainable loss of money or property" as a result. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47-18-109(a)(1)). We are mindful that the TCPA does contain some important limits. For one thing, it only applies to "acts 'affecting the conduct of any trade or commerce,'" including acts that are "a part of 'the advertising, offering for sale, lease or rental, or distribution of any goods, services or property . . . .'" *Crossley Constr. Corp. v. Nat'l Fire Ins. Co. of Hartford*, 237 S.W.3d 652, 657 (Tenn. Ct. App. 2007) (quoting Tenn. Code Ann. §§ 47-18-104(a), 47-18-103(11)). For another thing, it does not apply "[w]hen professionals like lawyers and doctors practice their professions outside their roles as businessmen or entrepreneurs" because they are "not engag[ed] in trade or commerce" within the meaning of the Act. *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 608 (W.D. Tenn. 2011).

Pagliara contends that JBPR acted unfairly and deceptively in "usurp[ing]" his alleged right to defend Butler's claim and "intentionally negotiat[ing]" a settlement that ultimately blemished his regulatory record. Pagliara further contends that his suit is not barred by the limited exemption for professionals "because it relates, at least in part, to the business aspect of the defendant's practice," *see Constant v. Wyeth*, 352 F. Supp. 2d 847, 854 (M.D. Tenn. 2003), and because professionals can still be held liable for "negligent failure to meet recognized professional standards" under the TCPA, *see Davis v. McGuigan*, 325 S.W.3d 149, 161-62 (Tenn. 2010).

These arguments notwithstanding, Pagliara continues to fall short on his claim. First, he has failed to make the second half of the required showing. *See* Tenn. Code Ann. § 47-18-109(a)(1). Pagliara does not allege any sort of loss attributable to JBPR's allegedly unfair or deceptive acts beyond emotional distress and damage to his business reputation. Yet several Tennessee cases clearly hold that emotional distress is not sufficient to state a claim under the TCPA. *See, e.g.*, *Akers v. Prime Succession of Tenn., Inc.*, No. E2009-02203-COA-R3-CV, 2011 WL 4908396, at *26 (Tenn. Ct. App. Oct. 17, 2011); *Searle v. Harrah's Entm't, Inc.*, No. M2009-02045-COA-R3-CV, 2010 WL 3928632, at *12 (Tenn. Ct. App. Oct. 6, 2010). And even though damage to one's

business reputation might be enough to sustain an action at common law, *see Discover Bank v. Morgan*, 363 S.W.3d 479, 495-96 (Tenn. 2012), Pagliara does not cite a single authority that convincingly suggests it is enough to sustain an action under the TCPA.

Second, Pagliara cannot overcome the exemption for professionals rendering professional services. *See Wright*, 782 F. Supp. 2d at 608-10. Courts have held in no uncertain terms that the TCPA cannot be used to impose liability on lawyers practicing law. *Cf. Constant*, 352 F. Supp. 2d at 853 & n.10 (holding that medical professionals are immune from suit under the TCPA "when the plaintiff's allegations concern the actual provision of medical services"). Here, the negotiation of a settlement to resolve a legal claim is a classic case of practicing law, and we see no reason why the TCPA should apply in spite of this fact. In arguing otherwise, Pagliara reads too much into *Davis v. McGuigan*, which involved an appraiser who was sued for negligent misrepresentation after he overstated the value of the plaintiff's home. 325 S.W.3d at 162. As Pagliara concedes, it "did not expressly address the issue of whether and to what extent professionals such as doctors and lawyers are subject to the TCPA." That alone renders it inapposite.

In the end, Pagliara fails to allege sufficient facts to make out a claim under the TCPA; but even if he could, he likewise fails to cite any authority that lifts the bar on claims against professionals practicing their craft, as JBPR was here. We thus conclude that the district court did not err in granting JBPR's motion to dismiss Pagliara's claim.

III.

For these reasons, we affirm.