Charlotte Anne NEWSOM,
Plaintiff/Appellant,

v.

THALHIMER BROTHERS, INC., James
McCoy and Sarah McIntyre,
Defendants/Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 19, 1994.

Application for Permission to Appeal
Denied by Supreme Court
May 8, 1995.

James F. Schaeffer, Jr., Memphis, for plaintiff.

D. Edward Harvey, Memphis, for defendant.

TOMLIN, Presiding Judge, Western Section.

Charlotte Anne Newsom ("plaintiff" or "Ms. Newsom") filed a petition in the Circuit Court of Shelby County, accusing James McCoy, Sarah McIntyre and their employer, Thalhimer Brothers Inc. ("defendants" or by name) of extortion, intentional infliction of emotional distress and false imprisonment. In a jury trial, at the conclusion of plaintiff's proof the trial court directed a verdict in favor of defendants as to all claims. Generally stated, the sole issue plaintiff presents to this court on appeal is whether the trial court erred in granting a directed verdict in favor of defendants. We find no error and affirm.

Plaintiff was employed as a salesperson by Thalhimer at its Memphis store. At approximately 1:20 p.m. on the day in question, at the request of an assistant manager, plaintiff reported to the store's office where McCoy and McIntyre, employed by Thalhimer as part of its security staff, waited to question her.

She testified that McCoy and McIntyre first accused her of stealing $500 from Thalhimer, but told her if she paid them $20 they would call it "even." Newsom denied stealing any money from Thalhimer. McCoy and McIntyre exhibited to her a videotape which they said showed her stealing money, but she was never shown the contents of the tape. During questioning, Newsom recalled that the cash register that she had used some three weeks previous was $10 short at closing. She believed that the shortage occurred when another employee with a different register code than hers used the same register to conduct a "no sale" transaction.

Newsom further stated that during the interrogation McCoy and McIntyre threatened to call the police if she failed to confess to the theft. She stated that because of these threats, she felt that she could not leave the office. Regarding this matter, she testified as follows:

Q. Ms. Newsom, did you—what happened next? Were you denying this or—

A. Yes, sir, I kept denying it and saying that I hadn't stolen anything, and they kept telling me that I needed to hurry up and to admit to it or they were just going to call downtown and told me if I wouldn't cooperate they would have me arrested and told me that they had been very patient with me and that I would be patient with them. James McCoy said that to me. He looked at me and said, I have been patient with you, and you will be patient with me.

Q. Did you ever at any time decide to leave the room or want to leave the room?

A. Yes, sir. I asked if I could leave the room, and they told me I could not. If I did, I would be prosecuted.

Q. At what point during these conversations did you ask to leave?

A. I asked to leave from the very beginning when they first started accusing me of stealing money, and then again I had asked throughout the whole time I was in this office, which by the way was locked from the outside. No one could walk in that room unless they had a key. And they just kept accusing me of stealing money. And I had asked if I could leave,

and they kept saying, well, we'll just send you to 201, or if you leave they will be waiting at the door to carry you downtown.

Q. What did they mean when they said 201?

A. I'm assuming they meant the jail house.

Q. Is that 201 Poplar Avenue?

A. Yes, sir.

Q. So, did you feel free to leave?

A. No, sir, I did not.

Q. Were you fearful of being arrested?

A. Yes, because I had been—it had been drilled in my head then for a good hour that I had stolen something. They almost had me convinced that I had stolen something, and I knew I hadn't.

. . . .

Q. At any time did you try to get up and leave that room?

A. No, because I was too scared, because I was afraid they were going to call the police have me like falsely arrested or something.

At no time, according to plaintiff, did either McIntyre or McCoy touch her or use any profanity toward her while they were interviewing her in the room. She further stated that neither of the two individuals threatened to personally arrest her. Rather, they stated that they would have her arrested if she attempted to leave the room.

At approximately 3:30 p.m. on that day, plaintiff gave the following handwritten statement to McCoy and McIntyre:

My name is Charlotte Newsom. I am nineteen years old. . . . I am currently employed at Thalhimers. My position is sales associate. I have been employed since March 1989. I am writing this statement of my own free will with no threats or promises made to me. I was called in by Susan Edwards. I sat in a room where I talked to James McCoy and Sarah McIntire. I was questioned about missing money from Register 68, 69 and 70. They, James and Sarah, told me they had proof of me stealing. The only incident where I have stolen anything from this company was a damaged light ring set in April of

1989. I do not remember nor did I steal from this company. I should not be liable for anything that I did not steal. I do not think that an innocent person should be accused and asked to pay for something they did not do. In closing I would like to state that to my knowledge I have not stolen anything. It may be a possibility, but I can't remember.

After signing the statement, Newsom asked to speak to a lawyer. At about that time, one of the security staff got the store manager, who came to the office where the interrogation had taken place. The manager asked plaintiff if she understood that she was being terminated, and then gave her a separation notice. After her termination, she surrendered her credit card, name badge and clientele book, whereupon she was permitted to leave the office as well as the premises. Some time later, this suit ensued.

■ Directed verdicts are appropriate only when reasonable minds, after reviewing the evidence, could reach only one conclusion. Thus, when an appellate court is considering whether a trial court should have granted a directed verdict, it should take the strongest legitimate view of the evidence in favor of the prevailing party, allow all reasonable inferences favorable to that party, and disregard the evidence to the contrary. *Brown v. SCOA Indus., Inc.*, 741 S.W.2d 916, 919 (Tenn.App.1987).

In her complaint, plaintiff sued defendants for extortion, intentional infliction of emotional and mental distress and false imprisonment. As noted, the trial court granted defendants a directed verdict as to all claims.

From a reading of plaintiff's brief in this court, plaintiff did not address the trial court's action as to the claims of intentional infliction of emotional and mental distress and extortion, either in the way of a specific issue or in the argument portions. Accordingly, under our rules, we will not consider them but treat them as waived. *See* Rule 27 T.R.A.P.

■ False imprisonment is the intentional restraint or detention of another without just cause. *Brown*, at 919. The elements of the tort of false imprisonment are

(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint. *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990).

■ In the case before us, the single issue presented by this appeal is whether plaintiff's proof rises to the level of creating a jury question as to whether defendants restrained her. Plaintiff voluntarily accompanied a superior employee to the manager's office. During the course of her interrogation, neither McCoy nor McIntyre used any force or made any threats against her. Plaintiff testified that she made no attempt to leave the office, but that she felt compelled to remain by virtue of McCoy's and McIntyre's statements that if she did leave the office they would call the police. In our opinion, this evidence does not present a jury issue as to a detention.

Our research has presented no reported case in this state involving the alleged detention of an employee under the same or similar circumstances. We have, however, found cases from other jurisdictions to support the conclusion that we have reached. In *Martin v. Santora*, 199 So.2d 63 (Miss.1967), an employee of Gibson's Discount Store was interrogated by management concerning a theft of some merchandise. During the interrogation, she was requested by the store manager to accompany the police to the police station for the purpose of fingerprinting as part of the store's effort to ascertain who had committed the theft. She testified that she was taken to police headquarters, fingerprinted and returned to the store where she worked until she was relieved. She further testified that she thought she was under arrest.

In reversing and dismissing the judgment of the trial court on a false imprisonment charge in favor of plaintiff, the Mississippi Supreme Court stated:

In order to constitute an unlawful imprisonment, where no force or violence is actually employed, the submission of the plaintiff must be to a reasonably apprehended force. The circumstances merely that one considers himself restrained in his person is not sufficient to constitute false impris-

onment unless it is shown that there was a reasonable ground to have believed defendant would resort to force if plaintiff attempted to assert her right to freedom. *Id.* at 65.

The *Martin* court quoted with approval the following from 35 C.J.S. *False Imprisonment* § 11 at pages 636–637 as follows:

On the other hand, submission to the mere verbal direction of another, unaccompanied by force or by threats of any character, cannot constitute a false imprisonment, and there is no false imprisonment where an employer interviewing an employee declines to terminate the interview if no force or threat of force is used, and false imprisonment may not be predicated on a person's unfounded belief that he was restrained against his will.

*Id.*

In *Malanga v. Sears, Roebuck and Co.,* 109 A.D.2d 1054, 487 N.Y.S.2d 194 (1985), a former employee discharged by defendant brought charges against defendant for false arrest, malicious prosecution, defamation and intentional infliction of emotional distress after she was questioned by a store manager concerning her alleged involvement in a theft ring. Initially, the court granted defendant's motion for summary judgment on all causes of action, but subsequently, plaintiff's cause of action for false arrest and imprisonment was reinstated. On appeal, the trial court was reversed and defendant was granted summary judgment dismissing plaintiff's cause of action for false arrest and imprisonment. In so doing, the court stated:

Defendant did not personally confine the plaintiff. Plaintiff was a part-time employee of the defendant and was questioned during her regular business hours in familiar surroundings. She was not threatened in any way and was free to leave at any time. Plaintiff's fear that she would be arrested or fired if she left does not constitute the detaining force necessary to establish the tort of false imprisonment.

*Id.* 487 N.Y.S.2d at 196.

In *Blumenfeld v. Harris,* 3 A.D.2d 219, 159 N.Y.S.2d 561 (1957), the plaintiff entered into the back room of his employer's store for questioning. The court held that the employer's threats to peacefully invoke processes of law unaccompanied by force or any other form of restraint could not constitute false imprisonment. *Id.* 159 N.Y.S.2d at 563.

In *Morales v. Lee,* 668 S.W.2d 867 (Tex.Ct. App.1984) a former employee of defendant doctor sued for false imprisonment and was the recipient of a jury award in the amount of $20,000. Plaintiff, a part-time employee, was called into the defendant's office and, in the presence of a co-worker, defendant accused plaintiff of taking $5. Plaintiff testified in substance that the doctor got mad, "just went crazy," slammed a chart down on the desk, screamed and hollered and told her, "don't leave," stating that "if you leave, I'll call the police and the police will be here in a minute." *Id.* at 868. She testified that she was frightened of him. On appeal, the Texas Court of Appeals reversed the judgment of the trial court and dismissed plaintiff's suit. In so doing, it stated:

We agree that there is no evidence supporting a finding of false imprisonment.

. . . . .

Considering only the evidence favorable to the verdict, it seems clear that no false imprisonment occurred on April 19, 1978. Threats of future action, such as to call the police and have the plaintiff arrested, are not ordinarily sufficient in themselves to effect an unlawful imprisonment. W. PROSSER TORTS § 11.

*Id.* at 869.

■ We concur with and adopt the conclusion reached by the District of Columbia Court of Appeals in *Faniel v. Chesapeake & Potomac Telephone Co.,* 404 A.2d 147–52 (D.C.1979):

"[I]t is not enough for plaintiff to feel 'mentally restrained' by the actions of the defendant. The evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or to the assertion of authority."

*Id.* at 151–52 (citations omitted).

For the above-stated reasons, the judgment of the trial court is affirmed. Costs in

this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.