# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **PATTY M. RICHARDS**, | ) | Davidson County Circuit Court |
|  | ) | No. 96C-3278 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9708-CV-00379 |
|  | ) |  |
| **O'CONNOR MANAGEMENT,** | ) |  |
| **INCORPORATED and RUSS** | ) |  |
| **HACKETT**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

**FILED**

April 3, 1998

Cecil W. Crowson
Appellate Court Clerk

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Barbara N. Haynes, Judge**


**James R. Tomkins**, GLASGOW & VEAZEY, Nashville, Tennessee
Attorney for Plaintiff/Appellant.


**M. Bradley Gilmore**,
**Christina Norris,**
PARKER, LAWRENCE, CANTRELL & DEAN, Nashville, Tennessee
Attorneys for Defendants/Appellees.



OPINION FILED:


**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Patty M. Richards appeals the trial court's order granting the motion for summary judgment filed by Defendants/Appellees O'Connor Management, Inc., and Russ Hackett. In entering summary judgment in favor of the Defendants, the trial court dismissed Richards' claims for outrageous conduct and false imprisonment. We affirm in part, reverse in part, and remand for further proceedings.

For purposes of these summary judgment proceedings, the following facts were undisputed. In August 1996, Plaintiff Patty Richards visited the Hickory Hollow Mall in Nashville, where she made several purchases using mall gift certificates. In making her purchases, Richards incorrectly used the non-negotiable portions of the gift certificates and retained the original gift certificates. Richards explained that this mistake first occurred when an employee in the Dillard's hosiery department informed her that the non-negotiable copy was the portion that she should use. Richards continued to make purchases with the non-negotiable portions of the gift certificates until she had used seven of her eight gift certificates.

The following day, Richards received a telephone call from a clerk at Gloria Jean's, a coffee shop in the mall where she had used one of the gift certificates. The Gloria Jean's clerk told Richards that she had made her purchase using the wrong copy of the gift certificate and that she needed to bring the original certificate to the store. Richards stated that she would return to the store with the gift certificate within the next week.

On the same day Richards received the telephone call from the Gloria Jean's clerk, a Gloria Jean's employee also caused the following "mall alert" to be issued:

> Mall Alert sent on 8-10-96, because a Gloria Jean's employee inadvertently kept the paper non-negotiable part of the gift certificate and the customer left with the gift certificate and merchandise. It is the fault of the employee due to inexperience; however, the gift certificate must be recovered by Gloria Jean's. If it is presented in a store at [Hickory Hollow Mall], security will be called and an officer will take it to Gloria Jean's after it is verified to be the original gift certificate matching the copy above.

The mall alert included Richards' name and home address.

Five days after the mall alert was issued, Richards returned to the Hickory Hollow Mall with the original gift certificates, which she planned to exchange for the non-negotiable portions. Instead of going immediately to Gloria Jean's, Richards stopped at Watchworks, another mall merchant, to pick up her daughter's watch which was being repaired. When Richards identified herself to the Watchworks clerk, the clerk recognized Richards' name from the mall alert and called security.

Defendant Russ Hackett was the mall security guard who responded to the call from Watchworks. Hackett, who also worked as a Metropolitan Police Department officer, was wearing his police uniform and badge and was armed with a 9-mm Glock. When Hackett arrived at Watchworks, he did not know why security had been called. The Watchworks clerk identified Richards to Hackett and explained that Richards was the subject of a mall alert. Although Hackett did not remember the contents of the mall alert, he then approached Richards because he "wanted to be sure [she] stayed put."

As Hackett approached Richards, he asked her in a loud voice if she was Patty Richards. According to Richards, Hackett talked so loudly that he was shouting at times. Richards acknowledged that she was Patty Richards, and she asked if there was a problem. At the same time, the Watchworks clerk was preparing to hand Richards her daughter's watch. Hackett took the watch from the clerk's hand and demanded to know if Richards had paid for the watch. The Watchworks clerk assured Hackett that Richards owned the watch. Hackett then ordered Richards to back away from the Watchworks counter.

As Richards backed away from the counter, she reached for her purse to take it with her. At that time, according to Richards, Hackett "started really freaking out." He yelled and screamed at Richards, ordering her to take her hands off her purse and to let him look in the purse. Although Richards' recollection was vague, she also believed that Hackett put his hand on his gun when he was yelling and screaming at her. Richards complied with Hackett's orders and opened her purse so that Hackett could visually inspect its contents.

After viewing the contents of Richards' purse, Hackett ordered Richards to stand

nearby with another security guard who had arrived at about the same time as Hackett. Hackett took Richards by the arm and led her to where the second security guard was standing. When Richards asked the second security guard what was "going on," the guard told Richards that Hackett would return "in a minute," and he instructed her to "stay right here."

Satisfied that Richards "wasn't going anywhere," Hackett returned to the Watchworks counter to talk to the clerk. At that time, the clerk informed Hackett that the mall alert had been initiated by Gloria Jean's and that it "was about some gift certificates." Hackett then recalled that a mall alert had been issued involving gift certificates, but he did not remember if it involved "any kind of theft or inappropriate conduct of any kind." Hackett called the security officer in charge that day, Lt. Gorman, and told him that he had responded to the mall alert, that the mall alert was posted on the security office bulletin board, and that he "had Mrs. Richards at Watchworks." Lt. Gorman stated that he would meet Hackett at Watchworks after first going by the security office.

While waiting for Lt. Gorman, Hackett returned to where Richards was standing. Hackett handed Richards the watch and explained that there seemed "to be some question with Gloria Jean's about a gift certificate." Hackett asked Richards if she had used the non-negotiable portion of a gift certificate to make a purchase at Gloria Jean's. Richards answered "yes" and explained that she had come to the mall that night to return the original gift certificates to Gloria Jean's and the other merchants. Hackett escorted Richards back to the Watchworks counter, where she showed him the original gift certificates. Hackett tore off and retained the original gift certificate with the serial number matching the certificate used at Gloria Jean's. Richards then asked if she could "go take" the other gift certificates, but Hackett instructed her to stand there "for a minute." Specifically, Hackett told Richards to "[j]ust wait here" because another security guard was "checking [her] out" and would be there in a minute.

Upon observing the original gift certificates in Richards' possession, Hackett developed "some suspicion" that Richards may have stolen something because she apparently had spent the non-negotiable portions. It was undisputed that Hackett did not develop this suspicion until Richards showed him the original gift certificates, and Hackett acknowledged that, other than Richards' possession of the original gift certificates, he had no reason to suspect Richards of

committing a theft. Hackett observed nothing about Richards' attitude or demeanor which would cause him to believe that she had engaged in or was about to engage in any criminal offense.

When Lt. Gorman arrived a few minutes later, the officers decided that Gorman would accompany Richards to ensure that she delivered all of the original gift certificates to the various merchants. Lt. Gorman accompanied Richards to Dillard's, walking a short distance behind her "like [she] was under arrest or something." At Dillard's, Lt. Gorman agreed to take care of the remaining gift certificates for Richards, and he permitted her to leave the mall. Richards did not attempt to leave the mall prior to this time because she was "scared to death" and believed that she "would have been shot" if she "had tried to leave."

Richards subsequently brought this action for outrageous conduct, false imprisonment, and defamation against Hackett and against O'Connor Management, Inc., the entity which managed the Hickory Hollow Mall. After the parties conducted discovery, the Defendants moved for summary judgment, contending that, as a matter of law, the evidence did not support Richards' claims. The trial court agreed and granted the Defendants' motion. On appeal, Richards challenges only the trial court's dismissal of her claims for outrageous conduct and false imprisonment.

Summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

Applying this standard to the evidence presented in this case, we first affirm the trial court's dismissal of Richards' claim for outrageous conduct. In order to state a claim for the tort of

outrageous conduct, also known as intentional infliction of emotional distress,[1] a plaintiff's complaint must allege that the defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community." *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966) (quoting *Restatement (Second) of Torts* § 46), *abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996); *accord Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997); *Alexander v. Inman*, 825 S.W.2d 102, 105 (Tenn. App. 1991). As an initial matter, the courts have the burden of determining whether the alleged conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery" under a theory of outrageous conduct. *Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976); *accord Bain v. Wells*, 936 S.W.2d at 623; *Alexander v. Inman*, 825 S.W.2d at 105. After carefully reviewing the evidence presented in this case, we conclude that, even when viewed in the light most favorable to Richards, this evidence does not show conduct so extreme in degree as to support a cause of action for outrageous conduct. *See, e.g.*, *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 97-98 (Tenn. App. 1995); *Hudson v. Pickering*, 1989 WL 134748, at *2 (Tenn. App. Nov. 8, 1989).

The more difficult question presented in this case is whether the evidence, when viewed in Richards' favor, supports a cause of action for false imprisonment. False imprisonment is the intentional restraint or detention of another without just cause. *Newsom v. Thalhimer Bros.*, 901 S.W.2d 365, 367 (Tenn. App. 1994); *Brown v. SCOA Indus., Inc.*, 741 S.W.2d 916, 919 (Tenn. App. 1987). In order to establish a claim of false imprisonment, the plaintiff must allege and prove the following elements:

(1)  the detention or restraint of [the plaintiff] against his will and

(2)  the unlawfulness of such detention or restraint.

*Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990); *Newsom*, 901 S.W.2d at 367. After reviewing the depositions submitted by the parties in the summary judgment proceedings below, we conclude that Richards has submitted sufficient evidence to create genuine issues of

---

[1] *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997).

material fact as to both of these elements, *i.e.* whether Richards was detained or restrained against her will and whether such detention or restraint was unlawful.

This court has adopted the following rule with regard to the type of evidence required to support the detention element of false imprisonment:

> [I]t is not enough for plaintiff to feel "mentally restrained" by the actions of the defendant. The evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or to the assertion of authority.

*Newsom*, 901 S.W.2d at 368 (quoting *Faniel v. Chesapeake & Potomac Tel. Co.*, 404 A.2d 147, 151-52 (D.C. 1979) (omitting citations)). In order to support the element of detention, therefore, the plaintiff must present evidence that she was restrained or confined through the defendant's exercise of force, threats of force, or assertion of authority. *Newsom*, 901 S.W.2d at 368; *see also Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 621-22 (7th Cir. 1989); *Berry v. Loiseau*, 614 A.2d 414, 432 (Conn. 1992); *West v. King's Dep't Store, Inc.*, 365 S.E.2d 621, 623-24 (N.C. 1988); *Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443, 447 (Tex. Civ. App. 1965); *Skillern & Sons v. Stewart*, 379 S.W.2d 687, 691 (Tex. Civ. App. 1964). A determination of this issue may depend upon several factors, including "not only the actual words spoken but the relative size, age, experience, sex and physical demeanor of the participants." *Black v. Kroger Co.*, 527 S.W.2d 794, 800 (Tex. Civ. App. 1975).

We conclude that, when viewed in the light most favorable to Richards, the evidence reveals that Richards was detained against her will by the Defendants' use of force, threats of force, and assertion of authority. Hackett, wearing a Metropolitan Police Department uniform and armed with a 9-mm Glock, approached Richards and began shouting orders at her, such as to back away from the counter, to get her hands off her purse, and to allow him to look in the purse. Richards believed that, at one point during the encounter, Hackett placed his hand on his gun. For the next several minutes, Hackett proceeded to direct and control Richards' movements, leading her by the arm to where another security guard stood, instructing her to wait with the other security guard, and then, later, requiring Richards to wait with Hackett while he awaited the arrival of his supervising

officer. In their discussion of the gift certificates, Richards informed Hackett that she had come to the mall to return the originals, and she asked if she could "go take" the gift certificates. Hackett told Richards "no," and he instructed her to remain where she was until his supervisor arrived. Richards wanted to leave the mall, but she did not try to leave because she was afraid that she would be shot. Hackett contradicted some of Richards' testimony regarding these events, but he acknowledged that, when he approached Richards, his intent was to make sure Richards "stayed put."

In holding that this evidence was sufficient to create a genuine issue of material fact as to whether Richards was detained against her will, we distinguish the facts of this case from those found in *Newsom v. Thalhimer Bros.*, 901 S.W.2d 365 (Tenn. App. 1994). In *Newsom*, the plaintiff claimed that she was falsely imprisoned by two members of her employer's security staff, who allegedly threatened the plaintiff that, if she left the store manager's office, they would call the police and have her arrested. *Id*. at 366-67. In affirming a directed verdict entered in favor of the defendants, this court noted that the plaintiff voluntarily accompanied a supervisor to the store manager's officer and, further, that at no time during the encounter did the individual defendants touch the plaintiff, use profanity toward her, or in any way use force or make any threats of force against the plaintiff. *Id*. at 366-67. In contrast, the evidence in the present case indicated that the uniformed and armed Hackett shouted orders at Richards and that he directed some of her movements by taking her by the arm and leading her. We believe that this evidence creates a genuine issue of material fact as to whether Richards was detained against her will. *See Berry v. Loiseau*, 614 A.2d 414, 432 (Conn. 1992) (holding that trial court erred in directing verdict for defendants on false imprisonment claim where evidence showed that defendants took plaintiff by arm, escorted him to defendants' office and car, used abusive and threatening language toward plaintiff, and displayed revolver); *see also Wal-Mart Stores, Inc. v. Yarbrough*, 681 S.W.2d 359, 362 (Ark. 1984) (holding that trial court properly submitted issue of false imprisonment to jury where defendant's assistant manager testified that he had plaintiff guarded from time she was stopped until time police arrived).

We also conclude that the record contains sufficient evidence to create a genuine issue of material fact as to the unlawfulness of Richards' detention. In order to establish this element, a plaintiff must allege and prove that she was detained without probable cause. *Brown v. SCOA*

*Indus., Inc.*, 741 S.W.2d 916, 920 (Tenn. App. 1987); *Hudson v. Pickering*, 1989 WL 134748, at *1 (Tenn. App. Nov. 8, 1989). In urging this court to affirm the trial court's dismissal of Richards' false imprisonment claim, the Defendants contend that, as a matter of law, Hackett had probable cause to detain Richards because he suspected that she had committed a theft. *See, e.g.*, *Brown v. SCOA Indus.*, 741 S.W.2d at 920 (holding that store was entitled to directed verdict on false imprisonment claim because reasonable minds could not conclude other than that store employees had probable cause to detain plaintiff for shoplifting).

We respectfully disagree with the Defendants' contention. The mall alert issued relative to the gift certificates contained no suggestion that Richards had committed a theft. Instead, the mall alert indicated that "a Gloria Jean's employee inadvertently kept the paper non-negotiable part of the gift certificate" and that this mistake was "the fault of the employee due to inexperience." In his deposition, Hackett admitted that he initially did not know why Watchworks had called security and that, when he first approached Richards, he could not recall the contents of the mall alert. When told that the mall alert was initiated by Gloria Jean's and that it involved gift certificates, Hackett recalled the mall alert being issued but could not remember if it involved "any kind of theft or inappropriate conduct of any kind." Hackett did not discover the existence of the original gift certificates in Richards' possession until after he already had detained her for a period of time. Although Hackett testified that he then developed "some suspicion" that Richards may have committed a theft, Hackett also acknowledged that, other than Richards' possession of the original gift certificates, Hackett had no reason to suspect Richards of theft. Based on the foregoing evidence, we hold that a genuine issue of material fact exists as to whether Hackett's detention of Richards was supported by probable cause.

For the same reason, we reject the Defendants' contention that they were entitled to summary judgment based on the statutory defense provided in Tennessee Code Annotated section 40-7-116(c). That section provides that

> A merchant or a merchant's employee or agent or a peace officer who detains, questions or causes the arrest of any person suspected of theft shall not be criminally or civilly liable for any legal action relating to such detention, questioning or arrest if the merchant or merchant's employee or agent or peace officer:

(1)     Has reasonable grounds to suspect that the person has committed or is attempting to commit theft;

(2)     Acts in a reasonable manner under the circumstances; and

(3)     Detains the suspected person for a reasonable period of time.

T.C.A. § 40-7-116(c) (1990).  Although the statute refers to "reasonable grounds" rather than "probable cause," in the context of false imprisonment claims, this court has interpreted the two terms as having the same meaning.  ***Brown v. SCOA Indus.***, 741 S.W.2d at 919.

That portion of the trial court's judgment dismissing Richards' claim for false imprisonment is reversed, and this cause is remanded for further proceedings consistent with this opinion.  In all other respects, the trial court's judgment is affirmed.  Costs on appeal are taxed one-half to Richards and one-half to the Defendants, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)