NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0058n.06
No. 22-5197

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED** Jan 27, 2023 DEBORAH S. HUNT, Clerk |

MARISA WERNER,

      Plaintiff - Appellant,

v.

TAMMY C. YOUNG; ROBERT C. YOUNG; SEQUATCHIE VALLEY PREPARATORY ACADEMY,

      Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: SUHRHEINRICH, CLAY, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge.** Marisa Werner ("Plaintiff" or "Werner") was a student at a school owned and operated by Defendants when she was sexually abused and molested by the school owners' son over the course of two years. She brought suit against her abuser, Bryce Young ("Bryce"), as well as the school, Sequatchie Valley Preparatory Academy ("SVPA") and its owners, Robert Christopher Young ("Chris") and Tammy Young ("Tammy"), based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). At issue in this appeal are Werner's claims against Tammy, Chris, and SVPA. Werner appeals the district court's: (1) dismissal of her negligence, negligent retention, negligence per se, and breach of fiduciary duty claims against Tammy, Chris, and SVPA; and (2) grant of Tammy's motion for summary judgment on the false imprisonment claim against her. For the reasons set forth below, we **AFFIRM** the district court's order dismissing the negligence and breach of fiduciary duty claims against all defendants and the order granting summary judgment to Tammy Young.

## I. BACKGROUND

### A. Factual Background

SVPA is a non-profit conservative Christian boarding school owned and operated by Defendants Tammy and Chris Young in Dunlap, Tennessee. Tammy and Chris's son, Bryce, served as a volunteer instructor at SVPA.

Werner began attending summer camps at SVPA when she was eight years old. In 2014, she enrolled in the school's pre-veterinary program on a partial scholarship and lived at the school during the school year. Werner alleges that in January of 2017, when she was fifteen years old, Bryce began grooming her on a school trip to Honduras by engaging in "prolonged, 'inappropriate hugging'" with her in order to obtain Werner's trust and begin a sexual relationship with her. (Am. Compl., R. 20, Page ID #61).

Bryce first sexually abused Werner in September 2017 on a shuttle bus "while no one else was watching" during a school-sanctioned trip to Washington, D.C. (*Id.* at Page ID #62). In December 2017, Bryce sexually assaulted Werner a second time when he drove Werner and another student, who was sleeping in the back seat, off campus. Werner alleges that prior to the last incident of sexual abuse, Tammy and Chris "either knew or had reasonable cause to suspect that child sexual abuse had occurred due to the frequency of occasions, and the amount of time [Bryce] Young was alone with Ms. Werner, as well as Young's prolonged, 'inappropriate hugging' with Ms. Werner." (*Id.* at Page ID ##62–63).

On June 11, 2018, Bryce's wife, Natalie Young, discovered "inappropriate" text messages between Bryce and Werner on Bryce's phone. That same day, she told Tammy and Chris about the messages. After speaking with Natalie, Tammy confronted her son and asked him whether he had done anything inappropriate with Werner. After confronting Bryce, Tammy sought out

Werner and found her cleaning bathrooms on the second floor of the ranch house. Tammy let Werner know that she needed to speak with her and left while Werner finished cleaning.

After Werner had finished cleaning, she moved to the kitchen and was speaking with someone in the hallway when Tammy returned. Tammy reiterated that she needed to speak with Werner and Werner paused and expressed hesitation. In response, Tammy "grabbed [Werner's arm] briefly in the staircase," "re-emphasized" that she needed to talk to Werner "now," and then "let [her] arm go" as they walked downstairs. (Werner Dep. Tr., R. 53-1, Page ID #365.). Tammy then led Werner into a private room, closed the door, and confronted her about the messages found on Bryce's phone and the nature of her relationship with Bryce.

In an affidavit attached to her opposition to Tammy's motion for summary judgment, Werner wrote a different version of the start of her encounter with Tammy on June 11, 2018, than the one she recounted in her deposition testimony. Werner indicated during her deposition that Tammy's physical contact was limited to a brief grab. In contrast, Werner specifies in her affidavit that Tammy grabbed her forearm and "directed and controlled [Werner's] movements by pulling [Werner] towards her and downwards" towards the stairs. (Werner Aff., R. 71-3, Page ID ##867–69).

Werner testified that during the period that Werner was in the room with Tammy, Tammy interrogated Werner in a hostile manner and accused her of participating in "sexual sin" and told her she needed to "repent." (Werner Dep. Tr., R. 53-1, Page ID #370). It is undisputed that Tammy never explicitly prohibited Werner from leaving the room, and that Werner never asked to leave the room. However, Werner stated in a supplemental affidavit that she believed she would not be permitted to leave the room.

After their conversation, Tammy directed Werner to pack her belongings, and drove Werner to the bus station so she could take a shuttle home to her parents. After dropping off Werner at the bus station, Tammy confronted her son Bryce, telling him that his life at the school was over and directing him to pack his belongings. Tammy then reported Bryce to "the local sheriff's department, the sheriff's department for Ms. Werner's home, and online." (Appellees' Br. at 11 (citing Tammy Young Dep. Tr., R. 67-2, Page ID ## 624–27)).

## B. Procedural History

On August 31, 2020, Marisa Werner sued Bryce Young, Tammy Young, Chris Young, and SVPA. (R. 1). She filed an amended complaint on October 31, 2020, bringing claims under Tennessee law[1] for:

I.     False imprisonment against Tammy Young;
II.    Negligence per se against Bryce Young;
III.   Negligence per se against [SVPA], Tammy Young, and Chris Young;
IV.    Negligence against [SVPA], Tammy Young, and Chris Young;
V.     Negligent retention against [SVPA], Tammy Young, and Chris Young;
VI.    Respondeat superior and/or vicarious liability against all Defendants;
VII.   Breach of fiduciary duty against all Defendants;
VIII.  Childhood sexual abuse against Bryce Young and [SVPA];
IX.    Assault against Bryce Young;
X.     Battery against Bryce Young;
XI.    Intentional infliction of emotional distress ("IIED") against Bryce Young; and Punitive damages against all Defendants.

(Am. Compl., R. 20, Page ID ##68–82). The district court approved a settlement agreement and consent order that resolved all claims against Bryce Young and awarded Werner $3 million.

---

[1] This case is a diversity dispute and requires application of Tennessee substantive law. *See Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 405 (6th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

SVPA, Tammy, and Chris moved to dismiss the negligence and breach of fiduciary duty claims in Counts III, IV, V, VI, VII, VIII, and XII of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted this motion, leaving only the false imprisonment claim against Tammy.

After discovery closed, Tammy filed a motion for summary judgment on the false imprisonment claim. Werner responded by opposing the summary judgment motion, relying on a new affidavit supplementing her deposition testimony. The district court granted Tammy's motion for summary judgment. In its order granting Tammy's motion for summary judgment, the court *sua sponte* struck portions of Werner's affidavit pursuant to the sham affidavit rule. On appeal, Werner argues that the district court: (1) erred by dismissing her negligence and breach of fiduciary claims against SVPA, Tammy, and Chris; (2) abused its discretion by not permitting her to amend her complaint after dismissing the negligence and breach of fiduciary duty claims; (3) abused its discretion by striking portions of the affidavit Werner filed opposing Tammy's motion for summary judgment; and (4) erred by granting Tammy's motion for summary judgment on the false imprisonment claim. Werner does not appeal the district court's dismissal of the childhood sexual abuse claim against SVPA (Count VIII).[2]

---

[2] Defendants assert that Plaintiff has not appealed the *respondeat superior* claim (Count VI). In her reply, Plaintiff clarifies that although she is not appealing the district court's dismissal of this count as it relates to her attempts to hold SVPA liable for Bryce Young's actions, she will pursue this theory of liability if this Court reverses the dismissal of her negligence and breach of fiduciary duty claims, intending to hold SVPA liable for Chris and Tammy Young's actions. Werner notes that she is not pursuing *respondeat superior* as a cause of action but as a theory for recovery against SVPA on her negligence and breach of fiduciary duty claims.

## II. DISCUSSION

### A. Dismissal of Negligence and Breach of Fiduciary Duty Claims

In her amended complaint, Werner brought several negligence-based claims alleging that Tammy, Chris, and SVPA "either knew or had reasonable cause to suspect" that Bryce had sexually abused Werner "due to the frequency of occasions, and the amount of time, Young was alone with Ms. Werner, as well as Young's prolonged, 'inappropriate hugging' with Ms. Werner." (Am. Compl., R. 20, Page ID ##62–63). The district court determined that Werner failed to allege facts showing that Defendants knew or had reason to suspect that Bryce was abusing Werner prior to June 11, 2018, when Tammy and Chris first learned of the text messages between Werner and Bryce. In dismissing her claims, the court noted that the allegation that Tammy and Chris knew or had reason to know prior to the last incident of abuse was a "legal conclusion couched as a factual allegation" since the complaint only made "vague allusions to 'alone time' between her and Bryce" which is not unusual "in the context of a small school." (Order on Mot. to Dismiss, R. 42, Page ID ##226–27).

This Court reviews a district court's grant of a motion to dismiss *de novo*. *See Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457 (6th Cir. 2022). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 458 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Upon review of a motion to dismiss, we construe "the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in its favor, and accept all well-pleaded allegations in the complaint as true." *Keene Group, Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021) (citation omitted).

Turning first to Plaintiff's claim for negligence per se, Plaintiff contends that the district court erred by dismissing this claim because she alleged that prior to the last incident of abuse, Defendants had reasonable cause to suspect that she was a victim of child abuse based on the inappropriate hugging and long periods of time that Plaintiff spent alone with Bryce. Defendants argue that the district court properly dismissed this claim because although the complaint makes those "conclusory allegations" about time spent alone and inappropriate hugging, there were no facts alleged that Chris, Tammy, or anyone else at the school "saw any such conduct or that anyone reported such conduct." (Appellees' Br. at 18).

To survive a motion to dismiss on a negligence per se claim, a plaintiff must allege that the defendant breached a statute and that defendant's breach of that statute proximately caused her injury. *See Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 734 (Tenn. 2019); *Ham v. Hosp. of Morristown, Inc.*, 917 F. Supp. 531, 535 (E.D. Tenn. 1995) (citing *Doe v. Coffee Cnty. Bd. Of Educ.*, 852 S.W.2d 899, 909 (Tenn. App. 1992)). Relevant to this case, Tennessee law requires any schoolteacher or other school official who "knows or has reasonable cause to suspect that a child has been sexually abused" to "report such knowledge or suspicion" to the department of children's services. Tenn. Code Ann. § 37-1-605(a)(4) (West 2020).

At issue is whether Werner has sufficiently alleged that Defendants' violation of the Tennessee reporting statute[3] proximately caused her injuries by stating that:

> Prior to the last instance of Defendant Young sexually abusing Ms. Werner, Tammy and Chris Young either knew or had reasonable cause to suspect that institutional child sexual abuse had occurred due to the frequency of occasions, and the amount

---

[3] Defendants dispute whether the Tennessee reporting statute creates a private right of action. (Appellee's Br. at 16). This court need not address the issue. Although the Tennessee Supreme Court has not definitively addressed the issue, it appears that some Tennessee courts do treat the violation of the mandatory reporter statutes as creating a private right of action for those children who are then abused as a result of a failure to report. *See Coffee Cnty. Bd. of Educ.*, 852 S.W.2d at 909.

of time, Young was alone with Ms. Werner, as well as Young's prolonged, "inappropriate hugging" with Ms. Werner.

(Am. Compl., R. 20, Page ID #70).

In deciding a motion to dismiss, a court is required to accept as true all factual allegations, but not legal conclusions, in a complaint. *Iqbal*, 556 U.S. at 678. A court is not required to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Where a complaint merely recites the "elements of a cause of action" and does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In this case, Werner has merely recited the elements of the cause of action, without alleging facts showing that Tammy, Chris, or any other person at SVPA knew about or suspected child abuse before June 11, 2018. Werner's allegations that Chris and Tammy were aware of inappropriate hugging and time spent alone are insufficient to establish that their failure to report proximately caused her injury. *See Coffee Cnty. Bd. of Educ.*, 852 S.W.2d at 909 (dismissing failure to report claim against teacher for failure to establish proximate cause because teacher learned of abuse after it had been perpetrated). Werner has not alleged that anyone saw or reported inappropriate hugging or excessive time spent alone, nor that anyone saw anything occurring between Bryce and Werner that would have given the person reason to suspect that Bryce was abusing her. Nor has Werner alleged that Defendants had previously received any reports that Bryce had sexually abused any other students. Without such facts, Werner's allegation that Defendants knew or had reasonable cause to suspect child sexual abuse is a legal conclusion not entitled to an assumption of veracity.

Werner's negligence,[4] negligent retention,[5] and breach of fiduciary duty[6] claims also fail to allege specific facts to establish that Defendants' actions proximately caused Werner's injuries. Werner cannot establish a claim for negligence or negligent retention for the same reason that she cannot establish a claim for negligence per se: she has not plausibly alleged that Defendants were aware of Bryce's abuse or propensity to commit childhood sexual abuse nor that any training would have prevented its occurrence. *See Snider v. Snider*, 855 S.W.2d 588, 591 (Tenn. Ct. App. 1993) (determining that school was not negligent in releasing child to uncle who sexually abused child because there was no evidence that school officials were aware that uncle posed a threat to child and injury to child was thus unforeseeable); *see also Roe v. Cath. Diocese of Memphis, Inc.*, 950 S.W.2d 27, 32 (Tenn. Ct. App. 1996) (determining that sexual assault perpetrated by one student against another was not reasonably foreseeable to teacher where school "had no reason to suspect this behavior" from the assailant); *Jones v. Bedford Cnty.*, No. M200901108COAR3CV, 2009 WL 4841063, at *1, 4–5 (Tenn. Ct. App. Dec. 15, 2009) (noting that corrections officers'

---

[4] To assert a claim for negligence, a plaintiff must allege: "1) a duty of care owed by the defendant to the plaintiff; 2) breach of duty of care by the defendant; 3) injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *K.G.R. v. Union City Sch. Dist.*, No. W201601056COAR9CV, 2016 WL 7230385, at *3 (Tenn. Ct. App. Dec. 14, 2016) (citations omitted).

[5] In Tennessee, a plaintiff makes out a claim for negligent supervision and retention of an employee if she "establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008). This tort essentially involves answering the questions of whether the defendant had "notice of the wrongdoer's propensity to commit sexual misconduct, authority to prevent the harm, and some duty of care to those who were harmed?" *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 454 (Tenn. 2012) (quoting Ira C. Lupu & Robert W. Tuttle, *Sexual Misconduct and Ecclesiastical Immunity*, 2004 B.Y.U. L. Rev. 1789, 1856 n. 266 (2004)).

[6] To state a claim for breach of fiduciary duty, Tennessee law requires a plaintiff to allege: "(1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages." *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 818 (6th Cir. 2013). A fiduciary relationship arises "between two parties in any number of circumstances, both formal and informal, including 'whenever confidence is reposed by one party in another who exercises dominion and influence.'" *Id*. (quoting *Thompson v. Am. Gen. Life & Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005)). One who has a fiduciary duty to another is required "to act with due regard for the interests of another." *Id.*

sexual assault of plaintiff while plaintiff was incarcerated was not reasonably foreseeable to the county because there was no evidence that any person with supervisory authority had information that would "lead them to suspect a future sexual assault").

Werner's breach of fiduciary duty claim also fails to establish proximate cause. Assuming, without deciding, that Defendants owed a fiduciary duty to Werner, Werner did not allege facts showing that Defendants abused the trust she had placed in the school and its administrators to take advantage of her. On this count, as with her negligence-based claims, Werner makes only conclusory allegations that Defendants had "superior knowledge of the dangers posed to Ms. Werner by [Bryce] Young" and that "SVPA . . . recklessly allowed [Bryce] Young to groom students and molest them including Ms. Werner." (Am. Compl., Page ID ##75–76). The amended complaint alleges that Defendants knew that Bryce would sexually assault students but provides no specific facts in support of that allegation—for example, allegations of prior abuse committed by Bryce or reports of such abuse made to Defendants. These pleadings, like those made with respect to her negligence-based claims, are legal conclusions bereft of any specific facts that would allow her to establish that Defendants' breach of a fiduciary duty caused injury to Werner.

Because Werner fails to plead facts specifically alleging that Defendants were aware of abuse before June 11, 2018, the district court did not err by dismissing the negligence per se, negligence, negligent retention/supervision, and breach of fiduciary duty claims.

### B. Dismissal of Claims with Prejudice

Werner argues that the district court abused its discretion by dismissing her claims without granting her leave to amend. After filing her initial complaint, Werner sought the court's leave to amend the complaint and filed an amended complaint in October 2020. Following Defendants' motion to dismiss, Werner did not file any additional motions for leave to file an amended

complaint, nor did she include such a request in her opposition to Defendants' motion to dismiss. For the first time on appeal, she argues the district court abused its discretion by dismissing her claims with prejudice, without allowing her to file a second amended complaint.[7]

This Court reviews for abuse of discretion a district court's decision to grant a motion to dismiss with prejudice. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) (citation omitted). A district court does not abuse its discretion merely because it does not invite a plaintiff to file an amended complaint upon dismissing plaintiff's claims. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)).

Because Plaintiff never sought leave to file an amended complaint, it was not an abuse of discretion for the district court to dismiss her claims with prejudice. *Tucker*, 539 F.3d at 551 ("No abuse of discretion occurs when a district court denies a party leave to amend where such leave was never sought."). Furthermore, Plaintiff has not pointed to any extenuating circumstances for failing to file a motion to amend and gives "no reason to believe that amendment would not be futile." *Justice v. Petersen*, No. 21-5848, 2022 WL 2188451, at *4 (6th Cir. June 17, 2022); *Ohio Police & Fire Pension Fund*, 700 F.3d at 844 (determining that there were "no extenuating

---

[7] Just prior to the close of discovery, Plaintiff filed a motion for reconsideration requesting leave to file a second amended complaint using evidence uncovered during discovery, notably a voicemail by Tammy apologizing to Werner's parents that "something happened on our watch" and Werner's deposition testimony that "sexual hugging" took place in plain view of other students and that she had been admonished by Tammy for flirting with Bryce. (Mot. for Recons., R. 53, Page ID ##280–89). The district court denied the motion for reconsideration because Werner's deposition testimony was not new information since it was based on her own recollections and because Tammy's voicemail to Werner's parents did not indicate that Tammy had knowledge of the sexual abuse prior to its last occurrence. Werner has not appealed the district court's order on the motion for reconsideration, so this Court lacks jurisdiction to address whether the district court abused its discretion in denying the motion for reconsideration. *See United States v. Universal Mgmt. Servs., Corp.*, 191 F.3d 750, 757 (6th Cir. 1999) ("[T]he notice of appeal references only the district court's summary judgment rulings, we do not have jurisdiction to consider issues raised in the Motion for Reconsideration.").

circumstances justifying a departure from the principle that 'it is not the district court's role to initiate amendments'" (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008))).  For these reasons, the district court did not abuse its discretion in dismissing Werner's claims with prejudice.

### C.  Striking of Marisa Werner's Supplemental Affidavit

### 1.  Exclusion of affidavit pursuant to sham affidavit doctrine

After discovery concluded on Werner's false imprisonment claim, Tammy moved for summary judgment, arguing that there was no genuine issue of fact on any element of the false imprisonment claim.  Werner thereafter filed a response to the motion for summary judgment and attached an affidavit that sought to clarify the encounter between her and Tammy on June 11, 2018.  Tammy failed to file a reply, and the district court issued its order on the motion for summary judgment a day after the deadline for the reply.

The district court considered the affidavit and struck the portion of the affidavit that described Tammy's purported use of force to lead Werner to a private room.  The district court determined that this section of the affidavit was in tension with her deposition testimony and appeared to contain a formulaic recitation of the elements of a false imprisonment cause of action in an attempt to create an issue of fact.

After striking the section of the affidavit describing Tammy's interaction with Plaintiff on June 11, 2018, the district court determined that there was no evidence that Werner was detained against her will or that the detention was unlawful.  Werner argues that the application of the sham affidavit doctrine was improper since the district court relied on "erroneous factual findings" in determining that there was an inconsistency between the deposition testimony and the affidavit.

A district court's decision to strike an affidavit pursuant to the sham affidavit rule is an evidentiary ruling that is reviewed for abuse of discretion. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). A district court abuses its discretion when it "relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id.* (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006)).

The sham affidavit rule prohibits a party from filing a post-deposition affidavit that "directly contradicts the nonmoving party's prior sworn testimony." *Aerel*, 448 F.3d at 908 (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). If the affidavit does not directly contradict prior sworn testimony, it should not be stricken unless the court determines that it is in tension with the prior testimony and an attempt to create a sham issue of fact for trial. *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021); *Aerel*, 448 F.3d at 908. To determine whether the affidavit attempts to create a sham fact issue, the court can assess whether "affiant was cross-examined during [her] earlier testimony, whether the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Aerel*, 448 F.3d at 909 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

During her deposition, Werner testified:

> Mrs. Tammy was, like, I need to talk to you now. And I kind of waited because I was getting nervous at that point. I hesitated for a second. And then my arm was grabbed briefly in the staircase. The door was open, and we were standing at, like, the top of the staircase. And she said, I need to talk to you now, re-emphasized it. Then she let my arm go, and we walked downstairs. . . . We went to one of the guest restrooms – the guest rooms downstairs in the ranch house. So downstairs was where the girls' dorm is, and then there's two guest bedrooms down there and then another kitchen. And we went in the room, she closed the door, we sat down on the bed, and we had a conversation.

(Werner Dep. Tr., R. 53-1, Page ID ##365–66). Werner also testified that she could not remember whether she followed Tammy or whether Tammy followed her down the stairs and into the guest room. In the affidavit attached to her motion in opposition to summary judgment, Werner wrote:

> While standing in the doorway of the stairwell in the main ranch house, I nervously hesitated after Tammy Young stated to me for the second time that she "needed to speak with [me] now." In response to my hesitation, Tammy Young grabbed my forearm and stated to me for the third that she "needed to speak with [me] now," placing extra emphasis on the word "now." Mrs. Young used an aggressive, coercive tone.
>
> When Tammy Young grabbed my arm, she used much greater force than normal, though not her full strength.
>
> The force in which Tammy Young grabbed my arm immediately indicated to me that there was a severe issue occurring, as Mrs. Young had not previously used aggressive physical force towards me, besides disciplinary paddling.
>
> While I had witnessed Tammy Young angry several times during the eight years I spent at the ranch, when Tammy Young grabbed my forearm, this was the most infuriated I had ever seen her. I could feel her blood boiling.
>
> While grabbing my forearm, Tammy Young directed and controlled my movements by pulling me towards her and downwards in the direction of the stairs. I felt compelled to move down the stairs, and she let go of my arm once I walked down in front of her while she followed closely behind me.
>
> I yielded to Tammy Young's assertion of authority over me because you do not say no or argue with authority figures at SVPA, especially not Tammy Young. Not a single thought in my mind suggested that I could have refused to let her take me wherever she wanted me to go.
>
> Once we reached the bottom of the stairs, Tammy Young went in front of me because I had stopped, unaware of where she wanted me to go.
>
> Once Tammy Young began walking in front of me, she led me into a guest bedroom on the bottom floor of the main ranch house. Tammy closed the door behind her. The room had no other doors and only one small window. The only exit was the door we used to enter the room.

(Werner Aff., R. 71-3, Page ID ##867–69).

As the district court determined, Werner's affidavit is in tension and at times conflicts with her deposition testimony. First, Werner's statement that Tammy "directed and controlled my movements by pulling me towards her and downwards in the direction of the stairs" conflicts with

her prior statement that Tammy only "briefly" grabbed her arm. While the testimony does not directly contradict her prior testimony, the brief encounter described in the deposition testimony indicated that Tammy grabbed Werner's arm as a way of emphasizing the urgency of the conversation whereas the description of the encounter in the affidavit suggests a more prolonged encounter wherein Tammy is physically pushing Werner in a certain direction. These differences reveal a tension between Werner's deposition testimony and her later-filed affidavit.

The district court also determined that Werner's affidavit was an attempt to "create an issue of fact where none exists" since the included descriptions were "conclusory recitations of the elements of false imprisonment." (Order on Mot. for Summ. J., R. 75, Page ID #927). This determination was not an abuse of discretion because Werner was directly questioned about this encounter during her deposition. *See Boykin*, 3 F.4th 832 at 842 (noting that sham affidavit rule would apply in a situation where a deposed individual testified that they could not recall an event, only to submit a subsequent affidavit testifying to the previously forgotten details). Moreover, the language used in the affidavit tracks the elements of the false imprisonment cause of action, but fails to provide factual specificity, indicating that Werner's affidavit was submitted as an attempt to create an issue of fact where none exists.

Additionally, during the deposition, Werner could not recall who led the way down the stairs or into the room, whereas Werner's affidavit recalls that Tammy was behind Werner as they walked down the stairs and that Tammy led the way into the room. This is a plain contradiction that could contribute to the application of the sham affidavit rule. *See Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) ("Where a deponent is 'asked specific questions about, yet denie[s] knowledge of, the material aspects of her case, the material allegations in her

affidavit directly contradict her deposition.'" (quoting *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 353 (6th Cir. 2013)))

Accordingly, the district court did not abuse its discretion in striking the portions of the affidavit that contradicted or were in tension with Werner's prior deposition testimony.

### 2. *Sua sponte* **exclusion of evidence**

Werner argues that the district court was wrong to grant the motion for summary judgment on a ground that was not advanced by Tammy. Werner argues that Federal Rule of Civil Procedure 56(f)(2) requires the court to give notice and an opportunity to respond before granting a motion for summary judgment on a ground not advanced by the parties. Plaintiff is correct that a court must give "notice and a reasonable time to respond" when granting a summary judgment motion "on grounds not raised by a party." Fed. R. Civ. P. 56(f)(2). The district court, however, did not grant summary judgment on a different ground than the one advanced in Defendant's motion. Rather, the court determined that Plaintiff failed to point to evidence raising a genuine issue of fact on each of the elements of the false imprisonment claim. Tammy made this same argument in her motion for summary judgment.

Accordingly, the application of the sham affidavit rule was an evidentiary ruling. District courts "generally have broad discretion regarding evidentiary rulings." *Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015). Sixth Circuit law permits district courts to "exclude evidence *sua sponte*." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1034 (6th Cir. 2003) (affirming district court's grant of summary judgment after *sua sponte* exclusion of evidence). The district court did not abuse its discretion by *sua sponte* striking sections of Werner's affidavit pursuant to the sham affidavit rule.

**D. District Court's Grant of Tammy Young's Motion for Summary Judgment**

Werner also appeals the district court's grant of summary judgment on the false imprisonment claim, arguing that the district court erred by viewing the facts through "Tammy Young's self-serving lens" and not in the light most favorable to the non-moving party. (Appellant's Br. at 15).

This Court reviews a district court's grant of a motion for summary judgment *de novo*. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022). Summary judgment is properly granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating whether a motion for summary judgment was properly granted, "this Court views the evidence in the light most favorable to the party opposing the motion." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," since "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In Tennessee, the elements of the civil cause of action for false imprisonment are "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990) (first citing 32 Am. Jur. 2d *False Imprisonment* § 5 (1982); and then citing *Little Stores v. Isenberg*, 172 S.W.2d 13, 15 (Tenn. Ct. App. 1943)). Merely "[f]eeling mentally restrained is not sufficient to establish false imprisonment; the restraint must be against the plaintiff's will, such as when the plaintiff yields to force, the threat of force, or the assertion of authority." *Doe v. Andrews*, 275 F. Supp. 3d 880, 885

(M.D. Tenn. 2017) (citing *Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994)).

Werner's testimony reveals that she was not detained or restrained against her will. Werner testified that she never asked to leave the room and Tammy never told her she could not leave the room. Even if Werner's affidavit is considered, Tammy's grabbing of Werner's arm did not constitute a restraint or detention since it was not accompanied with a threat of force or assertion of authority beyond that which Tammy was entitled to use toward a student in her capacity as a school administrator.[8] *See Newsom*, 901 S.W.2d at 367 (determining that employee who felt mentally restrained by employers who accused her of theft and threatened to call the police was not falsely imprisoned since neither employer touched her, used any profanity to her, nor stated they would personally arrest her); *cf. Little Stores*, 172 S.W.2d at 15, 17 (determining that jury verdict on false imprisonment in favor of woman accused of theft was not in error where store clerk grabbed her arm and led her back to the store, scared her with his loud voice, and made her fear that he would put her in jail if she did not accompany him).

Although Tammy did grab Werner's arm before they both walked down the stairs, Werner presented no other evidence indicating that she was yelled at or that she felt that she would have been subjected to any harm, arrest, or other physical restraint had she not complied with Tammy's directive to go talk in a private room. *See Doe*, 275 F. Supp. 3d at 886 (determining that plaintiff presented no evidence that defendant restrained or detained her after alleged sexual assault even though evidence showed that plaintiff was in a bathroom with defendant and that door was locked,

---

[8] Tennessee law permits schools to discipline students using corporal punishment. *See* Tenn. Code Ann. § 49-6-4103(a) (West 2018) ("Any teacher or school principal may use corporal punishment in a reasonable manner against any pupil for good cause in order to maintain discipline and order within the public schools."); *see also Paul v. McGhee*, 577 F. Supp. 460, 461–62 (E.D. Tenn. 1983) (determining that school teacher who punished student corporally did not violate his constitutional rights) (citing *Ingraham v. Wright*, 430 U.S. 651, 672 (1977)).

plaintiff had previously said she would not consent and was too drunk to give consent, finding it relevant that no evidence indicated that defendant forced plaintiff to enter the bathroom or stopped her from leaving or otherwise "restrained her by force or by threat"); *but see Richards v. O'Connor Mgmt., Inc.*, No. 01A01-9708-CV-00379, 1998 WL 151392, at \*4–5 (Tenn. Ct. App. Apr. 3, 1998) (determining that plaintiff provided facts sufficient to survive summary judgment on false imprisonment claim where defendant shouted at plaintiff, was armed and wearing a police uniform, took her by the arm to another officer, and touched his gun in a manner that led her to believe he would shoot her if she did not comply with his shouted orders).

Furthermore, Werner's affidavit makes clear that she agreed to go with Tammy to talk, not because Tammy exercised physical force by grabbing her arm or threatening Werner with physical force, but because Werner understood that school culture and policy required that she comply with requests by authority figures. In her affidavit, Werner stated: "I yielded to Tammy Young's assertion of authority over me because you do not say no or argue with authority figures at SVPA." (Werner Aff., R. 71-3, Page ID ##867–69). A "verbal direction" that is unaccompanied by "a reasonably apprehended force" or threat of force or restraint is not a detention sufficient to constitute false imprisonment. *See Newsom*, 901 S.W.2d at 367-68 (quoting *Martin v. Santora*, 199 So. 2d 63, 65 (Miss. 1967)).

Because Werner did not present evidence that she was detained against her will, the district court did not err in granting Tammy's motion for summary judgment on Plaintiff's false imprisonment claim.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's orders (1) dismissing the negligence and breach of fiduciary duty claims against all Defendants and (2) granting summary judgment to Tammy Young.